# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| ARTHUR MUNGER<br>816 E. 11th St.<br>Ashtabula, Ohio 44004<br>　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>CHROMAFLO TECHNOLOGIES<br>CORPORATION<br>2600 Michigan Ave.<br>Ashtabula, Ohio 44004<br><br>　　**Serve also:**<br>　　Corporation Service Company<br>　　50 Broad Street Ste 1330<br>　　Columbus, OH  43215<br><br>　　　　　-and-<br><br>CASEY WEBSTER<br>2600 Michigan Ave.<br>Ashtabula, Ohio 44004,<br><br>　　　　　-and-<br><br>DON BRANDON<br>2600 Michigan Ave.<br>Ashtabula, Ohio 44004.<br><br>　　　　　Defendants. | CASE NO.<br><br>JUDGE:<br><br><br>**COMPLAINT FOR DAMAGES**<br>**AND INJUNCTIVE RELIEF**<br><br>**JURY DEMAND ENDORSED**<br>**HEREIN** |

　　　　Plaintiff, Arthur Munger, by and through undersigned counsel, as his Complaint against

the Defendants, states and avers the following:

## PARTIES

1.　　Munger is a resident of the city of Ashtabula, Ashtabula County, Ohio.

2.　　At all times herein, Munger was acting in the course and scope of his employment.



3. Chromaflo Technologies is a domestic corporation that does business at 2600 Michigan Ave., Ashtabula, Ohio in Ashtabula County.

4. Chromaflo Technologies is and, at all times hereinafter mentioned, was an employer within the meaning of R.C. 4112.01 et seq.

5. Chromaflo Technologies is and, at all times hereinafter mentioned, was an employer within the meaning of 42 U.S.C. § 2000e et seq.

6. Chromaflo Technologies is and, at all times hereinafter mentioned, was an employer within the meaning of 42 U.S.C. § 12101 et seq.

7. Casey Webster is a resident of the state of Ohio, upon information and belief.

8. Webster was, at all times hereinafter mentioned, an individual who was a manager and/or supervisor at Chromaflo Technologies who acted directly or indirectly in the interest of Chromaflo Technologies.

9. Chromaflo Technologies employed Webster in the position of Human Resources Manager.

10. Don Brandon is a resident of the state of Ohio, upon information and belief.

11. Brandon was, at all times hereinafter mentioned, an individual who was a manager and/or supervisor at Chromaflo Technologies who acted directly or indirectly in the interest of Chromaflo Technologies.

12. Chromaflo Technologies employed Brandon in the position of Third Shift Supervisor.

13. Brandon was, at all times hereinafter mentioned, an employer within the meaning of R.C. 4112.01 et seq.

14. Brandon made, and/or participated in, the adverse actions asserted, herein.

The Employee's Attorney.™ 

**JURISDICTION & VENUE**

15. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Munger is alleging a Federal Law Claim under the Civil Rights Act of 1964, 28 U.S.C. § 2000e et seq. ("Title VII") and the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA").

16. All material events alleged in this Complaint occurred in Ashtabula County, Ohio.

17. This Court has supplemental jurisdiction over Munger's state law claims pursuant to 28 U.S.C. § 1367 as Munger's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

19. Within 300 days of the conduct alleged below, Munger filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2019-02881 ("Munger's EEOC Charge").

20. On or about October 20, 2020, the EEOC issued and mailed a Notice of Right to Sue letter to Munger regarding the Munger EEOC Charge.

21. Munger received his Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e(5)(f)(1), which is attached hereto as Plaintiff's Exhibit A.

22. Munger has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

23. Munger has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).



## FACTS

### A. Background

24. Munger is a former employee of Chromaflo.

25. In or around June 2018, Munger began working for Chromaflo.

26. Chromaflo employed Munger in the position of a Production Operator.

27. Munger was an exemplary employee with no history of meaningful discipline.

28. Munger first began working as a temporary employee at Chromaflo in or around June 2018.

29. Munger was diligent and hard-working and proved himself to be a competent and reliable employee who successfully performed the demanding duties of his job.

30. In or around September 2018, Chromaflo hired Munger as a direct, permanent employee.

### B. Mungers' Disability

31. Munger suffers from nerve damage. ("Disability").

32. Mungers' Disability affects his nervous and body systems.

33. Mungers' Disability substantially impaired one or more of his major life activities including his circulatory, cardiovascular body systems and working.

34. Mungers' Disability is a physical impairment.

35. Mungers' Disability is a disease.

36. Mungers' nerve damage is a disability.

37. As a result of Munger's nerve damage, Munger is and was considered disabled within the meaning of R.C. 4112.01 et seq.



### C. Munger Is Injured On The Job

38. In or around October 2018, Munger was performing his duties at Chromaflo when he experienced pain in his side, later diagnosed as nerve damage, but kept working. ("On-The-Job Injury").

39. As a result of Munger's On-The-Job Injury, Munger visited the emergency room after work.

40. Because Chromaflo did not like to deal with workers' compensation claims, Munger, fearful of jeopardizing his job, did not file a workers' compensation claim.

41. Alternatively, Munger believed that if he filed a workers' compensation claim, because of Chromaflo's prior negative disposition toward employees who filed workers' compensation claims, Mungers' belief that his job would be jeopardized was reasonable.

42. Alternatively, Munger believed that because his job would be jeopardized by filing a workers' compensation claim, he could not file a workers' compensation claim.

43. Munger did make a first report of his On-The-Job Injury to his supervisor. ("Mungers' First Report Of Injury").

44. Upon receiving Munger's First Report of Injury, Chromaflo did not notify the Bureau of Workers' Compensation about Mungers' On-The-Job Injury.

45. Chromaflo's decision not to notify the Bureau of Workers' Compensation about Mungers' On-The-Job Injury supported Munger's understanding that Chromaflo discouraged workers' compensation claims.

46. Chromaflo intentionally failed to notify the Bureau of Workers' Compensation about Mungers' On-The-Job Injury.

The Employee's Attorney.™ 

47. Chromaflo willingly failed to notify the Bureau of Workers' Compensation about Mungers' On-The-Job Injury.

48. Chromaflo told Munger that it would take care of his injuries.

49. Munger justifiably relied on Chromaflo's telling Munger that it would take care of his work-related injuries.

50. Munger detrimentally relied on Chromaflo's telling Munger that it would take care of his work-related injuries.

51. Chromaflo never paid for Munger's work-related injuries.

52. Chromaflo never paid for medical bills arising out of Munger's work-related injuries

53. An injustice to Munger may only be avoided through the enforcement of Defendants' promises to Munger.

54. Defendants made these promises with the reasonable expectation that its promises would induce action or forbearance by Munger.

55. Defendants did not perform on its promises.

56. Munger, to his detriment, actually and justifiably relied on Defendants' promises by refraining from filing a workers' compensation claim.

57. An injustice to Munger may only be avoided through the enforcement of Defendants' promises.

58. Munger continued experiencing periodic episodes of severe pain in his side resulting from his On-The-Job Injury.

59. As a result of Munger's On-The-Job Injury, Munger required additional rest, but continued working and performing his regular duties at Chromaflo.

The Employee's Attorney.™ 

### D. Munger Notifies Webster About His On-The-Job Injury And Requests Accommodations, Which Webster Denies

60. In or around December 2018, Munger's On-The-Job Injury worsened when his pain becoming so excruciating that Munger could no longer work.

61. Munger notified Webster about his On-The-Job Injury and provided Webster with supporting medical documentation from his doctor. ("Mungers' Second Report of Injury").

62. Webster reviewed Mungers' First Accommodation Request and told Munger that, "Chromaflo does not have light duty work." ("Chromaflo Does Not Have Light Duty Work Comment").

63. Mungers' Second Report of Injury also included medical documentation returning Munger to work with light duty work restrictions. ("First Accommodation Request").

64. In response to Webster's Chromaflo Does Not Have Light Duty Work Comment, Munger identified several jobs that he could perform that fit within his light duty work restrictions. ("Mungers' Attempt To Find Light Duty Work").

65. In response to Mungers' Light Duty Request, Webster refused to accommodate Munger. ("Denial Of Reasonable Accommodations").

66. Webster's Denial Of Reasonable Accommodations to Munger was denied intentionally.

67. Websters' Denial Of Reasonable Accommodations To Munger was denied willingly.

68. Websters' Denial Of Reasonable Accommodations To Munger was denied knowingly.

69. Websters,' Chromaflo Does Not Have Light Duty Comment, was a denial of reasonable accommodations to Munger.

70. Defendants had knowledge of Mungers' Second Report of Injury.

71. Following Mungers' Second Report of Injury, Defendants knew Munger was disabled.

The Employee's Attorney.™ 

### E. Webster Tells Munger, "Go Get Better And Come Back When You're Ready For Full Duty"

72. After the Denial Of Reasonable Accommodations to Munger, Webster told Munger, "Go get better and come back when you're ready for full duty." ("Go Get Better And Return When You Are Ready For Full Duty Comment").

73. Go Get Better And Return When You Are Ready For Full Duty Comment established a full health policy/blanket no restriction policy.

74. A full health policy or a blanket no restriction policy is per se unlawful.

75. Defendants knew that a full health policy or a blanket no restriction policy is per se unlawful.

76. Applying a full health policy/blanket no restriction policy to Munger establishes that Defendants perceived Munger as being disabled.

77. Websters' Go Get Better And Return When You Are Ready For Full Duty Comment was made intentionally.

78. Websters' Go Get Better And Return When You Are Ready For Full Duty Comment was made willingly.

79. Websters' Go Get Better And Return When You Are Ready For Full Duty Comment was made knowingly.

80. Websters' Go Get Better And Return When You Are Ready For Full Duty Comment was disability discrimination.

81. Alternatively, Websters' Go Get Better And Return When You Are Ready For Full Duty Comment violated workers' compensation laws and denied Munger workers' compensation benefits, up to and including lost wages and job protection.



82. Munger was a qualified individual who, with or without reasonable accommodation, could perform the essential functions of his job.

83. Chromaflo did not determine if Mungers' Light Duty Request would cause an undue hardship.

84. After Mungers' First Accommodation Request, Chromaflo did not engage in an interactive process to find a reasonable accommodation for Mungers' disability.

85. Defendants have no contemporaneously created documents reflecting any effort to determine whether Mungers' First Accommodation Request would cause an undue hardship.

86. Mungers' First Accommodation Request was reasonable.

87. There was an accommodation available that would have been effective and would not have posed an undue hardship to Defendants.

88. Defendants failed to provide any accommodations to Munger and effectively denied Mungers' First Accommodation Request.

### F. Defendants Perceived And Regarded Munger As Being Disabled

89. As a result of Mungers' Second Report of Injury, Defendants perceived Munger as being disabled.

90. Alternatively, as a result of Mungers' Second Report of Injury, Defendants perceived Munger as having one or more physical and/or mental impairments.

91. Alternatively, as a result of Mungers' Second Report of Injury, Defendants perceived Munger as being substantially limited by one or more physical and/or mental impairments.

92. Alternatively, as a result of Mungers' Second Report of Injury, Defendants regarded Munger as being disabled.



93. As a result of Mungers' Second Report Of Injury, Defendants knew Munger had a record of physical disability that qualified as an impairment including proof that Mungers' disabilities required him to work in a light duty capacity.

### G. Defendants Encouraged Munger To Apply For Short Term Disability Leave Then Interfered In The Process Causing Munger's Initial Approval And Subsequent Denial

94. Over the continuing weeks, Munger continued having excruciating pain and was in and out of the hospital ("Regular Hospital Visits").

95. During Mungers' Regular Hospital Visits, Munger gave Chromaflo frequent updates.

96. Munger was diagnosed with nerve damage and Munger reported his diagnosis to Chromaflo. ("Nerve Damage Diagnosis").

97. Munger received an anticipated return to work date of January 25, 2019 and notified Chromaflo of his anticipated return to work. ("Anticipated Return To Work Date").

98. In response to Mungers' Nerve Damage Diagnosis, Chromaflo advised Munger to apply for Short Term Disability Leave through an insurance company. ("Apply For Short Term Disability Advice").

99. In response to Chromaflo's Apply For Short Term Disability Advice, Munger applied for and was approved for Short Term Disability Leave. ("Mungers' Approval For Short Term Disability Leave").

100. Munger applied for Short Term Disability Leave because he was off work caring for his disability and had no income without it.

101. Munger, upon approval, would have had an income had Chromaflo notified the Bureau of Workers' Compensation about Mungers' On-The-Job Injury.

10



102. Alternatively, Munger, upon approval, would have had an income had Chromaflo filed a workers' compensation claim with the Bureau of Workers' Compensation on Mungers' behalf.

103. Alternatively, had Munger not been fearful of jeopardizing his employment after learning about Chromaflo's aversion to the filing of workers' compensation claims, Munger, upon approval, could have filed his own workers' compensation claim and had an income while off work caring for his On-The-Job Injury.

104. Shortly after Mungers' Approval For Short Term Disability Leave, Chromaflo interfered with the process and Munger was terminated from Short Term Disability Leave. ("Defendants Regarded Munger As Disabled").

105. Chromaflo's Interference With Mungers' Short Term Disability Leave Approval denied Munger of an income while he was off caring for his On-The-Job Injury.

106. Chromaflo's Interference With Mungers' Short Term Disability Leave Approval was done intentionally.

107. Chromaflo's Interference With Mungers' Short Term Disability Leave Approval was done willingly.

108. Chromaflo's Interference With Mungers' Short Term Disability Leave Approval was done intentionally.

109. Chromaflo's Interference With Mungers' Short Term Disability Leave Approval was done knowingly.

110. Chromaflo's Interference With Mungers' Short Term Disability Leave Approval is disability discrimination.

The Employee's Attorney.™ 

111. Chromaflo's Interference With Mungers' Short Term Disability Leave Approval resulted in Munger suffering lost wages.

112. Chromaflo is liable to Munger for Chromaflo's Interference With Mungers' Short Term Disability Leave Approval.

113. Chromaflo is liable to Munger for Chromaflo's Interference With Mungers' Short Term Disability Leave Approval that resulted in Munger suffering lost wages.

### H. Chromaflo Terminates Mungers' Employment Citing Mungers' Inability To Perform His Job Description

114. On January 25, 2019, Webster contacted Munger and told him that his employment at Chromaflo was being terminated because Munger could not perform his job description. ("Termination Of Munger For Failure To Perform His Job Description").

115. Chromaflo has a progressive disciplinary policy.

116. Based on Websters' Termination Of Munger For Failure To Perform His Job Description, Defendants did not give Munger an oral warning.

117. Based on Websters' Termination Of Munger For Failure To Perform His Job Description, Defendants did not give Munger a written warning.

118. Based on Websters' Termination Of Munger For Failure To Perform His Job Description, Defendants did not give Munger a final written warning.

119. Based on Websters' Termination Of Munger For Failure To Perform His Job Description, Defendants did not give Munger a suspension.

120. Alternatively, Defendant's first imposed the most harsh, adverse form of discipline against Webster, termination of his employment.

121. Defendants' assertion of Termination Of Munger For Failure To Perform His Job Description did not actually motivate Defendants' assertion to terminate Munger.



122. Defendants' assertion of Termination Of Munger For Failure To Perform His Job Description was insufficient to motivate the termination of Munger.

123. Defendants' assertion of Termination of Munger For Failure To Perform His Job Description was pretext to terminate Munger.

124. Defendants did not terminate similarly situated employees for failure to perform their job description.

125. Alternatively, Defendants did not terminate similarly situated employees who were not disabled.

126. Alternatively, Defendants did not terminate similarly situated employees who did not have an on-the-job injury.

127. Alternatively, Defendants did not terminate similarly situated employees who did not have the potential to file a workers' compensation claim.

128. Defendants terminated Munger on the basis of his disability.

129. Defendants intentionally terminated Munger on the basis of his disability.

130. Defendants willingly terminated Munger on the basis of his disability.

131. Defendants knowingly terminated Munger on the basis of his disability.

132. Defendants are liable to Munger for terminating him on the basis of his disability.

133. Defendants intentionally skipped progressive disciplinary steps in terminating Munger.

134. Defendants intentionally terminated Munger's employment.

135. Defendants intentionally took an adverse employment action against Munger.

136. Defendants willingly skipped progressive disciplinary steps in terminating Munger.

137. Defendants willingly terminated Munger's employment.

138. Defendants willingly took an adverse employment action against Munger.



139. Defendants knowingly skipped progressive disciplinary steps in terminating Munger.

140. Defendants knowingly terminated Munger's employment.

141. Defendants knowingly took an adverse employment action against Munger.

**COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. 4112.01 ET SEQ.**

142. Munger restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

143. Defendants were aware that Munger suffered from an actual disability and/or physical impairment.

144. Alternatively, Defendants perceived Munger to suffer from a disability or physical impairment.

145. Defendants terminated Munger because of his actual disability and/or physical impairment.

146. Alternatively, Defendants terminated Munger because they perceived Munger to have a disability and/or physical impairment.

147. Defendants conduct was in violation of violated R.C. 4112.01 et seq.

148. As a direct and proximate result of Defendants' conduct, Munger suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

**COUNT II: FAILURE TO ACCOMMODATE UNDER R.C. 4112.01 ET SEQ.**

149. Munger restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

150. Defendant violated R.C. 4112.02.

151. Defendants violated R.C. 4112.02 by failing to engage in the interactive process.



152. Defendants violated R.C. 44112.02 by failing to provide Tompkins with a reasonable accommodation.

153. Defendants violated R.C. 4112.02 by failing to offer Munger the opportunity to pay for any accommodation that provided an undue hardship.

154. Munger suffered emotional distress as a result of Defendants' conduct and is entitled to emotional distress damages pursuant to R.C. 4112.01 et seq.

155. As a direct and proximate result of Defendants' conduct, Munger suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT III: DISABILITY DISCRIMINATION IN VIOLATION OF AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101 ET SEQ

156. Munger restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

157. Defendants treated Munger differently than other similarly situated employees based on his disabling condition.

158. Defendants treated Munger differently than other similarly situated employees based on his perceived disabling condition.

159. Defendants failed to make reasonable accommodation for Munger's Disability.

160. Defendants failed to engage in the interactive process to determine whether there was a reasonable accommodation for Munger's Disability.

161. On or about January 25, 2019, Defendants terminated Munger's employment without just cause.

162. Defendants terminated Munger's employment on the basis of his disability.

163. Defendants terminated Munger's employment on the basis of his perceived disability.



164. Defendants violated the Americans with Disabilities Act when it terminated Munger on the basis of his disability.

165. Defendants violated the Americans with Disabilities Act when it discharged Munger on the basis of his perceived disability.

166. Defendants violated the Americans with Disabilities Act by discriminating against Munger on the basis of his perceived disabling condition.

167. As a direct and proximate result of Defendant's conduct, Munger suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT IV: RETALIATION IN VIOLATION OF R.C. 4112.02(I)

168. Munger restates each and every prior paragraph of this Complaint as if it were fully restated herein.

169. Pursuant to R.C. 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

170. Munger suffered emotional distress as a result of Defendants' conduct and is entitled to emotional distress damages pursuant to R.C. 4112.01 et seq.

171. As a direct and proximate result of Defendants' retaliatory discrimination against and termination of Munger, he suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT V: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

172. Munger restates each and every prior paragraph of this Complaint as if it were fully restated herein.



173. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating an employee to avoid a Workers' Compensation claim.

174. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating and/or retaliating against an employee because he engages in protected activity under Ohio law.

175. Specifically, in *Sutton v. Tomco Machine*, 129 Ohio St.3d 153, 163 (2011), the Ohio Supreme Court noted, "we recognize a common-law tort claim for wrongful discharge in violation of public policy when an injured employee suffers retaliatory employment action after an injury but before he or she files, institutes, or pursues a workers' compensation claim."

176. Defendants' termination of Munger jeopardizes the public policies in *Sutton*.

177. Defendants' termination of Munger was motivated by conduct related to these public policies in *Sutton*.

178. Defendants had no overriding business justification for terminating Munger.

179. As a direct and proximate result of Defendants' conduct, Munger has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## DEMAND FOR RELIEF

WHEREFORE, Munger demands from Defendants the following:

a) Issue an order requiring Defendants to restore Munger to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;



b) An award against each Defendant of compensatory and monetary damages to compensate Munger for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

d) An award of reasonable attorneys' fees and non-taxable costs for Thompkins' claims as allowable under law;

e) An award of the taxable costs of this action; and

f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ Brian D. Spitz
Brian D. Spitz (0068816)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:   (216) 291-5744
Email:  brian.spitz@spitzlawfirm.com

*Attorney for Plaintiff Arthur Munger*

The Employee's Attorney.™


## **JURY DEMAND**

Plaintiff Arthur Munger demands a trial by jury by the maximum number of jurors permitted.

/s/ Brian D. Spitz
Brian D. Spitz (0068816)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:   (216) 291-5744
Email:  brian.spitz@spitzlawfirm.com

*Attorney for Plaintiff Arthur Munger*

